## OLIVER *et al.*, *vs.* PERSONS.

1. The defendant in every equity cause may deny on oath the execution of any document exhibited to the bill, and thus put the complainant on proof.
2. A party having two distinct titles to property may disclaim one and rely entirely on the other, and after such election made, the admissions of his privies in the disclaimed title are not evidence against him.
3. To admit a copy as secondary evidence at common law, it is necessary to show: 1. The genuineness of the original. 2. Its loss or destruction, and 3. That the copy offered is an examined, sworn or true copy.
4. Under our Registry Laws, a copy-deed is not evidence, unless the original appears to have been properly admitted to record.
5. Under the Act of 1856, a *prima facie* presumption in favor of proper probate is raised, where the records have been burnt. But this may be rebutted, and the Judge may hear evidence in rebuttal before admitting the copy as secondary evidence.

In Equity, from Warren Superior Court. Tried before Judge Thomas, at April Term, 1860.

This was a bill filed by plaintiff in error against defendant for the recovery of sundry slaves. The plaintiff claimed title under a deed of gift made in 1827, by Rachael Persons to Turner Persons, Jr., to a remainder interest in said slaves after the death of said Rachael. Defendant denied, in his answer, the existence of the deed, and filed a plea of "*non est factum,*" he claiming title under a subsequent gift from Rachael Persons.

On the trial, complainant moved to strike out the plea of "*non est factum*" filed to the deed of Rachael Persons. The Court refused the motion, and complainant excepted.

The complainant having complied with the 52d common law rule, as to the loss of the deed from Rachael Persons to Turner Persons, Jr., offered the following evidence of Mrs. Cynthia Chapman and William Wilder. The former testified that she heard Mrs. Rachael Persons state that she had executed a deed of gift to her son, Turner Persons, in conveying to him the aforesaid property, and that her reason for doing so was to induce him to cease dissipation and live with her; and that at the same time this statement was made, the negroes were on the place where Mrs. Rachael Persons and

her son Turner Persons lived, but did not know in whose legal possession they were.

The latter, Wm. Wilder, testified that he knew the negro property in the possession of Rachael Persons, but has seen nothing of the negroes for a great many years; that the last he knew of them they were with Mrs. Rachael Persons at Thomas Persons' house, and also stated the death of the subscribing witnesses to the deed of Rachael Persons. Complainant then offered the following copy-deed:

"GEORGIA—WARREN COUNTY:

"Know all men by these presents, I, Rachael Persons, (widow) of the county aforesaid, for, and in consideration of the sum of five dollars to me in hand, well and truly paid by Turner Persons, the receipt whereof is hereby acknowledged, as well as the good will and affection which I have and bear for the said Turner Persons, Jr., do give and convey to him, the said Turner Persons, his heirs and assigns, five negroes, to-wit: Miley, a woman, and her four children, Mary, Peter, William and Eliza with her future increase.

"To have and hold forever, provided, I have for myself the possession and service of all said negroes during my life.

"In testimony whereof, I have hereunto set my hand and seal, the 9th day of February, 1827.

her
"RACHAEL ⋈ PERSONS.
mark.

"Signed, sealed and delivered in presence of
"B. CULPEPPER,
"WILLIAM PORTER."

"GEORGIA—WARREN COUNTY:

"I, George W. Dickson, Clerk of the Superior Court of said county, do hereby certify, that the copy-deed above written, was truly and correctly copied by me from the record of the original deed, and that the same is a true and correct copy of, and from said record, which said record was at that time in my office. I do further certify, that said deed was proved by the affidavit of one of the subscribing witnesses thereunto, and which affidavit was duly recorded in my office along with the record of the original deed. I do further certify, that the record of said deed, and of said affidavit, have both been destroyed by fire, and are not now in my office.

Oliver *et al.*, *vs.* Persons.

" In testimony whereof, I have hereunto set my hand and affixed my private seal, there being no seal of office, this, October 18th, 1854.          GEORGE W. DICKSON. [L. S.]"

The Court rejected the copy-deed and certificate, and complainant excepted. The complainants' counsel then introduced George W. Dickson as a witness, who testified as follows:

" I got the copy deed from the book containing the record of deeds in my office. The book has been burned ; the Court-house was burned, and I think the book was destroyed ; I have never seen it since ; the Court-house was burned in April, 1854. I do not know whether any of the books were out of the office, in Mr. Shivers' hands, or not. Mr. Shivers was transferring some of the books at the time of the order of the Inferior Court. I don't know whether he had this book or not ; I saw some of the books of deeds. I don't know that the book which contained this deed was in the office or not ; had not seen the book since I copied the deed from it. This paper don't contain the whole that was on the deed ; there was something else on it—I don't know what it was ; don't know as I ever read the balance. I copied all that Mr. Oliver told me to copy, and gave it to him and he paid for it. The reason I did not copy all, was, that Mr. Oliver said that it was enough ; he wanted to show it to his attorney and recover the property, if he could ; I did not give the certificate at the time I gave the copy ; I gave the certificate after the record was lost or burned. Judge Cone dictated to me the certificate ; he told me he wanted me to make it out, and he wanted me as a witness. At the time I thought it was a probate. Judge Cone asked me about it, and I told him I thought it was a probate. Judge Cone said yes. Daniel Dennis swore to it. I thought it was a probate, but my mind has undergone a change about the paper. I mean by a probate, an affidavit attached to it. I never read it. If I did read it, I don't recollect it ; don't know what was in it ; if there was any affidavit there I don't know it ; don't recollect that there was any name signed to what I called the probate ; dont know there was any Justice of the Peace's name to it. Judge Cone told me, Daniel Dennis' name was to it. It must have been from the registry of deeds I took it, though I have no circumstance from which I could

say it was from that or from the record of proceedings, or from the minutes. Judge Cone called upon me and asked me if I recollected the facts; don't know that it was when I gave the certificate; can't tell whether it was before or after, that Judge Cone asked me that. The certificate, as I gave it, was my recollection of the facts at the time. I thought it was my duty as an officer of the Court, to give Judge Cone, or any one that applied to me, all the aid in my power, but in truth I did not think much about it. (Interrogations handed to witness.) These are my interrogatories. At the time I thought I was doing right. The answer contained my recollection then of the matters stated in them. I cannot say now that my answer was correct; I won't say now they were incorrect, but it is possible and highly probable they were incorrect. The reason I say so, I don't recollect that I ever read what I have called a probate. Copy is marked Book Q, but I cannot recollect now whether it was the deed book or other records.

The other records were marked alphabetically as well as the deed books. I won't say that I copied all the instrument itself; I copied all Mr. Oliver asked me for; I copied right, I think, as far as I went; I copied this from a record, and as far as it goes it is a correct copy. They were old books that Mr. Shivers was employed to copy, but I can't say whether they were the books before or after 1820; have no recollection that any body had the book that contained the record I copied, or that I delivered it to anybody; I was Clerk until 1858. Don't recollect that book was ever in my office after; I looked up the record books about town after the fire and found some, (never found that one,) and have never seen it since; I think the books that Shivers transcribed were returned to my office, the original as well as the copies. I have never seen the book in question among those."

R. M. Wilder, sworn, says, I am Clerk of the Superior Court of the county. The books from 1818 or 1820 to 1844 are gone. Letter Q is missing. The other records, besides those of deeds, are lettered, and I think entered as low as Q, and part I am now recording is W.

Book lettered Q, containing the record of the proceedings of the Court from the office of the Clerk of the Superior Court, was then offered and admitted as evidence, which

showed that the deed from Rachael Persons to Turner Persons, Jr., was not recorded therein.

The counsel for defendant then offered William Gibson and Daniel Dennis as witnesses to be examined alone before the Court and not the jury. The introduction of which testimony the plaintiff's counsel objected. The Court overruled the objection and allowed the testimony, to which ruling of the Court the complainants' counsel excepts and assigns as error.

William Gibson introduced, testified that: At the request of Mr. Oliver he examined the Record of Deeds in the Clerk's Office of the Superior Court of Warren county, and found on the record, (that is copied into the Record Book of Deeds,) a paper purporting to be a deed of gift from Rachael Persons to Turner Persons for certain negroes. The copy of which shown witness, with the certificate of G. W. Dickson, Clerk, he thinks is a true and correct copy of said record. There was on said record what purported to be an affidavit, made according to the recollection of witness, by B. Culpepper, and attested by Daniel Dennis as a Justice of the Peace. Cannot recollect all that was in said affidavit; cannot give the language of said affidavit nor its substance, but recollects that neither the execution nor delivery of the deed was stated in the affidavit. Don't remember when the deed purported to be recorded, but is satisfied it was before 1830. The father of witness was the Clerk; the record was not in his hand-writing, or that of his son's, who sometimes wrote for him. It is frequently usual for an entry of the time of recording to be made on the record after every record deed, and signed by the Clerk. Does not recollect that there was any such entry after this instrument on the record.

Mr. Daniel Dennis introduced, testified: That he was elected a Justice of the Peace in 1813, continued in office until about 1842; was out a few years and was elected again, and is acting at this time; lived in the neighborhood of Mrs. Rachael Persons and Thomas Persons in 1827 and 1828, and before and after that time, and knew them well; also Mr. B. Culpepper and William Porter; have no recollection of attesting a deed of gift or any other paper from Mrs. Rachael Persons, to Thomas Persons, nor of administering to B. Culpepper an affidavit proving such a deed. In the habit when he attested papers, to know what they mean, and has no rec-

ollection of seeing such a deed; is very confident, almost certain, that had he attested or proved such a deed, he would have recollected it.    Is now about seventy-six years of age. He does not recollect all nor any of the deeds he attested, or had proved before him in the year 1827, 1829 or 1830.

Complainants' counsel then re-offered in evidence the certified copy of the deed from Rachael Persons to Turner Persons.    It, with so much of the certificate of the Clerk as relates to that copy, without that portion which relates to the probate of the paper and the destruction of the record, to which defendant's counsel objected.    The Court sustained their objection, and refused to permit the evidence to be submitted to the jury, to which rulings of the Court the complainants' counsel excepts, and assigns the same as error.

The counsel for complainant and defendant then agreed that the testimony of George W. Dickson and William Gibson, proving that exhibit D. was a copy of the record, should be considered as before the jury.    Whereupon complainants' counsel offered to read in evidence before the jury the copy-deed without the certificate of the Clerk as proof of the contents of the record.    To the introduction of which defendant's counsel objected.    The Court sustained the objection and refused to allow the evidence offered to go to the jury. To which ruling the counsel for complainant excepts and assigns as error.

Complainant then offered the evidence of Solomon Wilder, to prove certain admissions of Thomas Persons, Sr., on the ground, that in an answer formerly filed by defendant and afterwards withdrawn, he claimed title under the said Thomas Persons.    The Court rejected the evidence, and the complainant excepted.

WASDEN & NELMS, and WM. DOUGHERTY, for plaintiff in error.

A. H. STEPHENS & T. R. R. COBB, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

We shall affirm the judgment of the Court below; and as such is our conclusion, it is unnecessary to elaborate the minor points argued before us, especially as the counsel for

plaintiffs in error expressed his indifference as to those points unless there was a reversal on the principal error alleged. I content myself, therefore, with saying, that as to the plea of *non est factum,* a defendant in an equity cause clearly has a right to deny the execution of any document annexed as an exhibit to the bill, and thus put the complainant on proof. The formality of the plea is immaterial.

As to the testimony rejected of the sayings of Thomas Persons, Sr., we think the Court was clearly right. A party having two titles to the same property, certainly has a right to elect, under which he will defend; and when he has disclaimed all benefit of one title, he surely ought not to be burdened with any disability attaching to him as a privy in estate. The law attaches such disabilities as consequences of his claiming the benefits of the title; when he declines the latter, he relieves himself of the former. Nor do we perceive any inconsistency in the titles set up by defendant in his several answers. They seem to be portions of a series of acts all tending to the same purpose to perfect title in him.

The main question in this case is the admissibility in evidence of the copy-deed of gift. It was offered in various ways by the ingenius and able counsel for plaintiff in error in the Court below, and being rejected as often as offered, many errors are assigned. I shall notice each separately, but consider the entire question at once. The papers might be admissible: 1st, under the common law rules, or 2d, as a copy from the registry, or 3d, under the Act 1855–6. Did the case presented to the Court below make it admissible under either?

1. Under the common law to admit such secondary evidence, three facts must appear to the Court: 1st. The existtence and genuineness of the original. 2d. Its loss or destruction, and 3d. Evidence that the paper offered is either an examined or sworn copy. As to the first requisite, slight evidence is said, by some of the authorities, to be sufficient, and where no issue is made by the *pleading* as to the existence of the original, this seems to us to be right. When such an issue is made, as in this case, the Court ought to require some more cogent and satisfactory evidence, and such as we do not think appears in the record.

But if there was, this was no examined or sworn copy, but a copy of a copy, and hence inadmissible under the common law without other proof to annex it to the original.

2. Was it admissible as a copy of a registered deed? It purports to have been attested by two witnesses, neither of them officially. How came it upon the record? No probate accompanies the copy. Shall the Court presume it probated properly before recorded? In those States where the probate and order for registry is a judicial or *quasi* judicial proceeding, such a presumption might be urged upon the Courts, and with plausibility. But can it be done in this State where the registry is made without notice to a grantor and by a ministerial officer, who is allowed no discretion in the matter? We think not. A copy from the registry must show that the same came properly on the registry. The only evidence offered of that fact here, was the certificate of the Clerk that there was a probate attached to the deed on the record. Two fatal objections show this evidence to be insufficient, viz: 1. That this was a judicial opinion of the Clerk to which he was not competent to testify. 2. That the evidence of the Clerk himself disproves the truth of this certificate.

3. Was the copy admissible under the Act of 1856? That Act prescribes that "where in any counties in this State the public records of the county have been destroyed by fire, any deed or other instrument in writing *that is found to have been recorded,* and the record burnt, such deed or other instrument in writing shall *be taken and held* to have been recorded legally and upon sufficient proof of execution in all the Courts of this State." The 2d section allows the contents of the record to be proved by any person who at any time may have read the record. Two questions arise upon this statute, 1st. Is this presumption of proper probate *conclusive* or only *prima facie,* and subject to rebuttal? 2d. If traversable, before whom should the issue be heard, the Judge or the jury? Upon the first point we are, without difficulty, unanimous. The intent of the Legislature was clearly to relieve persons from the effects of such conflagrations by creating a presumption of proper probate in behalf of all their title papers. This was wise and generous legislation. But to go further, and to say to contestants of these titles, you shall be barred from showing the truth by legal evidence, would be unwise and iniquitious legislation, and such as the Courts would not lightly attribute to this co-ordinate branch of the government. Upon the 2d point we have had more difficulty.

But a majority of the Court have arrived at a conclusion as to the proper construction of this Act, which is conformable to the general principles of law, and yet seems to offer every benefit which any party could claim under it.

The admission of secondary evidence is a question exclusively for the Court. When once admitted, the other party *has no right* to introduce evidence to the jury to show that the Court erred in admitting such evidence. The decision of the Court *quoad hoc* is final. If, then, this presumption is traversable, the rebutting evidence must be heard by the Court *before he admits the secondary evidence.* What reason is there for receiving evidence which afterwards must be withdrawn on production of further testimony to the Court? If the rebutting evidence was submitted to the jury, what would be its effect? To call on the jury to decide a question which by law is properly for the Court, viz: whether a proper foundation is laid for the reception of secondary evidence? It would be a very anomalous question for the determination of a jury. Now, if there is much evidence, and conflicting evidence produced to the Court, we think the Judge might, of his own motion, call on a jury to decide this preliminary issue; or if either party demanded it, we think the Court ought to grant him a jury to decide this question of fact; otherwise, and in this case, we think the Court did right to hear the evidence on this preliminary question himself.

The decision of the Judge upon the facts proved meets our approval, and consequently, we see no error in his withholding this copy from the jury under the Act of 1856.

Several questions have been argued before us with zeal, and much research manifested in respect to them, upon which we express no opinion, especially as to the effect of our Registry Laws, in allowing copies of lost deeds to be given in evidence without further proof. There are unquestioned evils connected with the law practice which has obtained in the State, but we forbear to decide so momentous a point when it is unnecessary to the cause.